UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RAQUEL SPINOSO, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION H-19-3941 |
| PHH MORTGAGE CORPORATION, *et al.*, | § § § | |
| Defendants. | § § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a motion to dismiss filed by defendants PHH Mortgage Corporation d/b/a PHH Mortgage Services ("PHH") and GMAC Mortgage LLC ("GMAC") (collectively, "Defendants").[1]  Dkt 8.  Having considered the motion, related filings, and the applicable law, the court is of the opinion that Defendants' motion to dismiss should be GRANTED.

**I. BACKGROUND**

Plaintiffs Raquel Spinoso and Juan Luna (collectively, "Plaintiffs") filed this lawsuit to preclude Defendants from foreclosing on their property located at 2739 Sherwin Street, Houston, Texas 77007 (the "Property").  Dkt. 1, Ex. D-1 at 10 (state-court petition).  In October 2007, Plaintiffs obtained a mortgage loan from Homecoming Financial, LLC, in the amount of $284,900.000, secured by a Deed of Trust.  *Id. at* 5.  The loan was then assigned to GMAC and then to Ocwen Loan Servicing LLC ("Ocwen").  *Id.*  According the Defendants, PHH is the successor by merger to Ocwen.  Dkt. 8 at 6.

---

[1] Defendants indicate that Plaintiffs incorrectly sued PHH and Ocwen Loan Servicing, LLC as separate entities when in fact PHH is the successor by merger to Ocwen.  Defendants also indicate that defendant GMAC Mortgage LLC was erroneously identified as "General Motors Acceptance Corporation (GMAC).  Dkt. 8 at 6 n.1-2.

Since 2011, and with the exception of a few months, Spinoso struggled in making her mortgage payments.[2]  Dkt. 1, Ex. D-1 at 5, 7.  In 2011, Spinoso suffered from medical issues and loss of employment, which caused interruptions in making the mortgage payments.  *Id.*  Plaintiffs claim that Spinoso applied several times for a loan modification from GMAC, but her applications were all denied.  *Id. at* 6.  Around August of 2012, GMAC took steps towards a foreclosure sale of the Property, but Spinoso filed for bankruptcy "to protect her homestead property from foreclosure sale."  *Id.*  Plaintiffs allege that Spinoso withdrew her filing after GMAC promised to modify her loan.  *Id.*  On December 27, 2012, Spinoso filed for bankruptcy protection again, allegedly because GMAC failed to respond to her application for a loan modification.  *Id.*  While the second bankruptcy case was pending, GMAC assigned the loan to Ocwen.  *Id.*  Plaintiffs allege that Ocwen informed Spinoso that she would qualify for a loan modification, but the bankruptcy court had to approve it.  *Id. at* 6-7.  As a result, Spinoso withdrew the bankruptcy case; the loan was modified two years later in 2014.  *Id. at* 7.

In 2015, only a few months after the loan modification, Spinoso suffered another financial hardship.  *Id.*  Plaintiffs claim that even though Spinoso sent Ocwen "numerous applications for [another] loan modification," she had to resubmit yet another application in October 2016 because Ocwen informed her that they had no application from her on record.  *Id. at* 7-8.  On or around January 2017, Plaintiffs allege that Ocwen informed Spinoso that they sent her correspondences via email, but she claims that did not receive any correspondence from Ocwen.

---

[2] The factual allegations in the complaint relate exclusively to Raquel Spinoso, and the complaint is silent with regards to Juan Luna.  It appears that Luna is a plaintiff because his name is listed as one of the mortgagees. Dkt. 1, Ex. D-4 at 23.

*Id.* at 8. On February 9, 2017,³ Spinoso resubmitted her application. *Id.* Months later, when Hurricane Harvey made landfall in Houston, Spinoso alleges that she was displaced. *Id.* at 9. After the moratorium on foreclosures due to Hurricane Harvey was lifted, Plaintiffs allege that Ocwen proceeded towards the foreclosure sale of the Property. *Id.* They also claim that Spinoso did not receive any notice of default and opportunity to cure notice from Ocwen. *Id.*

On February 1, 2019, Plaintiffs allege that Ocwen transferred the loan to PHH. *Id.* at 15. However, Defendants assert that PHH is the successor by merger to Ocwen. Dkt. 8 at 6. Thereafter, according to Plaintiffs, PHH scheduled the foreclosure sale of the Property without first notifying Spinoso. Dkt. 1, Ex. D-1 at 15. The foreclosure sale was scheduled for October 1, 2019. *Id.*

On September 30, 2019, Plaintiffs filed their suit against PHH, Ocwen, and GMAC in the 333rd Judicial District for Harris County, Texas. *Id. at* 2. Upon removal to federal court based on diversity jurisdiction, PHH and GMAC filed this motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Fed. R. Civ. P. 12(b)(6); Dkt. 8. As of the date of this order, Plaintiffs have not responded to the Defendants' motion to dismiss. The motion is ripe for disposition.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only that the pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A court may dismiss a complaint for "failure to state a claim upon which relief can be

---
³ Plaintiffs mistakenly state that the date of the resubmission of her application was February 9, 2018. However, a fax receipt attached to the petition is dated February 9, 2017. Dkt. 1, Ex. D-1 at 40.

granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. As part of the *Twombly–Iqbal* analysis, the court proceeds in two steps. First, the court separates legal conclusions from well-pled facts. *Iqbal*, 556 U.S. at 678–79. Second, the court reviews the well-pled factual allegations, assumes they are true, and then determines whether they "plausibly give rise to an entitlement of relief." *Id.* at 679.

When considering a motion to dismiss for failure to state a claim, "a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Here, the court will consider Plaintiffs' complaint and their attached exhibits.

### III. ANALYSIS

Plaintiffs bring the following claims against PHH and GMAC: common law fraud, breach of contract, violations of the Real Estate Settlement Procedures Act ("RESPA"), and violations of the Texas Debt Collection Practices Act ("TDCPA"). Dkt. 1, Ex. D-1. Plaintiffs request a temporary restraining order and a temporary injunction to prevent Defendants from foreclosing.

*Id.* at 16.

Defendants move to dismiss all of Plaintiffs' claims for failure to state a claim. Dkt 8. Defendants assert that Plaintiffs' fraud claim is barred by the Economic Loss Doctrine and because the claim is not pled with specificity, the breach of contract claim fails because Plaintiffs suffered no damages, the RESPA claim fails because Plaintiffs did not and cannot allege actual damages, and the TDCPA claim fail because Plaintiffs did not allege any facts that would establish a cause of action under the TDCPA. Dkt. 8 at 7. Defendants request that the court dismiss this case with prejudice and deny Plaintiffs' request for injunctive relief. *Id.* The court will address each of these claims in turn.

A.  The Common Law Fraud Claim

Plaintiffs allege that Defendants' actions constitute common law fraud and misrepresentation of material facts which they "relied upon to [their] detriment." Dkt. 1, Ex. D-1 at 11. Plaintiffs assert that Defendants agreed on "numerous occasions during 2014–2017" to consider Plaintiffs for a loan modification. *Id.* Plaintiffs claim that after Defendants failed to respond to their requests, Defendants proceeded to post their property for foreclosure sale. *Id.* Defendants, however, argue that Plaintiffs' fraud claim should be dismissed because the complaint makes general allegations and fails to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Dkt. 8 at 9. Furthermore, Defendants argue the claim is barred by the economic loss doctrine. *Id.*

Under Texas law, to recover for a claim of common law fraud, a plaintiff must prove that (1) a material representation was made; (2) it was false; (3) the speaker knew it was false when

made or that the speaker made it recklessly without any knowledge of the truth; (4) the speaker made it with the intention that it be acted upon by the other party; (5) the party acted in reliance upon it; and (6) the party was injured as a result of the reliance. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex. 1992). State law fraud claims must be pled with particularity and are "subject to the heightened pleading requirements of FRCP Rule 9(b)." *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550–51 (5th Cir. 2010). A plaintiff must specify the fraudulent statements, "identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Id.* at 551.

Texas courts also recognize the economic loss doctrine---the general rule that precludes recovery under tort law when the plaintiff's economic loss is based on contract law alone. *Arlington Home, Inc. v. Peak Envtl. Consultants, Inc.*, 361 S.W.3d 773, 779 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). The nature of the injury determines which duty has been breached. *Sw. Bell Tel. Co. v. Delanney*, 809 S.W.2d 493, 495 (Tex. 1991). "When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Id.*

Here, Plaintiffs make specific allegations that Defendants falsely represented material facts. Specifically, the complaint allege that Defendants falsely claimed that they did not receive Plaintiffs' paperwork for their loan modification application. Dkt. 1, Ex. D-1 at 7. Plaintiffs present emails and fax receipts confirming that the paperwork was received by Defendants on October 19, 21, 22, and 31, 2016, November 1, 2016, and February 9, 2017. *Id.* at 25, 26, 37-40. Plaintiffs further allege that in spite of the fax receipts confirmations, Defendants continued to deny receiving the application. *Id.* at 7-8. Plaintiffs allege that Defendants promised to review

the application. *Id.* at 6. In reliance on the Defendants' promise, Plaintiff decided not to file for bankruptcy for the third time. *Id. at* 7. However, Plaintiffs concede that they received confirmation on February 13, 2017, that their application for a loan modification, which was submitted on February 9, 2017, was received and was being considered. *Id. at* 34, 40. Furthermore, Plaintiffs sought and were granted a Temporary Restraining Order from the 333rd Judicial District for Harris County for a foreclosure attempt in 2019. Dkt. 1, Ex. D-2 at 3-4. Consequently, there was no foreclosure against the Property. Accordingly, the Plaintiffs' common law fraud claim fails because the Plaintiffs failed to allege an injury as a result of their reliance on the Defendants' alleged promises. *See T.O. Stanley Boot Co.*, 847 S.W.2d at 222 (requiring an injury to result from the Plaintiffs' reliance).

Alternatively, under the economic loss doctrine, Texas courts preclude recovery in tort when the subject matter is contractual and the nature of the injury arises from a contractual duty. *Arlington*, 360 S.W.3d at 779. Plaintiffs' claim is contractual in nature and does not arise from a tort duty. Therefore, Plaintiffs' claim is also barred by the economic loss doctrine.

Accordingly, Defendants' motion to dismiss the common law fraud claim is **GRANTED**.

B.     The Breach of Contract Claim

Plaintiffs allege that Defendants' actions constitute a material breach of the Deed of Trust because Defendants did not provide Plaintiffs "with any Notice of Default and Opportunity to Cure notice" as required by the Texas Property Code. Dkt. 1, Ex. D-1 at 12. Defendants argue that Plaintiffs are precluded from maintaining a breach of contract claim because Plaintiffs were in breach of the loan since 2015 and failed to cure the delinquency. Dkt. 8 at 11. Further,

Defendants assert that the Plaintiffs have suffered no actual damages since the Plaintiffs obtained a Temporary Restraining Order from the state court. *Id. at* 13.

Section 51.002 of the Texas Property Code "governs the sale of real property under deeds of trust or other contract liens." *Lyons v. Am.'s Wholesale Lender*, No. 3:13-CV-2608-B, 2014 WL 5460453, at *5 (N.D. Tex. Oct. 28, 2014). It states, "Notwithstanding any agreement to the contrary, the mortgage servicer . . . shall serve a debtor in default . . . with written notice by certified mail stating that the debtor is in default . . . and giving the debtor at least 20 days to cure the default before notice of the sale can be given." Tex. Prop. Code § 51.002(d).

To state a claim for breach of contract under Texas law, a plaintiff must allege: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach by the defendant; and (4) damages resulting from the breach. *Lewis v. Bank of Am., N.A.*, 343 F.3d 540, 544–45 (5th Cir. 2003). A party to a contract who is himself in default cannot maintain a suit for its breach. *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990).

In their complaint, Plaintiffs acknowledge they were trying to resolve their delinquency with GMAC and Ocwen since "approximately 2015." Dkt. 1, Ex. D-1 at 7-9. Plaintiffs also concede that they contacted Ocwen to seek a loan modification as a result of Spinoso's financial hardship. *Id.* There are no allegations made that the delinquency was cured. *Id.* Therefore, the court finds that Plaintiffs fail to state a claim for breach of contract. *See Dobbins*, 785 S.W.2d at 378. Additionally, because there is no allegation of a foreclosure sale, Plaintiffs have not sufficiently alleged damages.

Accordingly, Defendants' motion to dismiss Plaintiffs' breach of contract claim is **GRANTED**.

C.  The Violation of RESPA Claim

Plaintiffs allege that Defendants failed, neglected, or refused to provide Plaintiffs with "any definitive reason why [their] numerous and repeated requests for a loan modification or other mortgage relief assistance [were] denied." Dkt. 1, Ex. D-1 at 13. According to Plaintiffs, Defendants cannot file a notice of foreclosure while the application remains pending because that action would violate Regulation X, 12 C.F.R. § 1024(f)(2)(i). *Id*.

Section 1024 of the Code of Federal Regulations implements the Real Estate Settlement Procedures Act of 1974, and section 1024.41 provides instructions on loss mitigation procedures. 12 C.F.R. § 1024.41. If a servicer receives a complete loss mitigation application from a borrower, the servicer is required under RESPA to notify the borrower if they were ineligible for a loss mitigation option before proceeding to foreclosure. 12 C.F.R. § 1024.41(f)(2)(i). A servicer meets its obligation under this section after notifying the borrower of their ineligibility even if the borrower submitted multiple applications so long as the borrower was delinquent at all times since submitting the first complete application. §1024.41(i). In other words, §1024.41(i) does not cover "duplicative" requests until the borrower is no longer delinquent. *Id.* A plaintiff fails to adequately plead a RESPA claim if he or she did not allege that the loss mitigation application in question was the first complete application during the current period of delinquency. *Id.; see also Solis v. U.S. Bank, N.A.,* 726 F. App'x 221, 223 (5th Cir. 2018) (holding that "[t]he district court did not err when it held that the Solises failed to allege that this

9

application was their first complete loss mitigation application."). To survive a motion to dismiss under Rule 12(b)(6) a plaintiff must allege "actual damages resulting from a violation of" section 2605 of RESPA. *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 768 (N.D. Tex. 2012) (*quoting* § 2605(f)(1)(A)).

In this case, Plaintiffs fail to allege that any of the "numerous and repeated" applications were their first complete application during the current period of delinquency (i.e., since their 2014 loan modification) as required by § 1024.41(i). Dkt. 1, Ex. D-1 at 7. Moreover, Plaintiffs did not suffer actual damages since they were granted a Temporary Restraining Order, which stopped the scheduled foreclosure sale. Dkt. 1, Ex. D-2 at 3-4. Therefore, the Plaintiffs failed to meet the pleading standard necessary to allege a violation a RESPA claim. *Solis*, 726 F. App'x 223; *See* Fed. R. Civ. P. 8(a).

Accordingly, Defendants' motion to dismiss the RESPA claim is **GRANTED**.

D. The Violation of TDCPA Claim

Plaintiffs allege that Defendants violated the TDCPA by "failing to provide Plaintiff[s] with the required Notice of Default" and instead accelerated the loan maturity and posted the Property for foreclosure. Dkt. 1, Ex. D-1 at 14. Plaintiffs also claim that Defendants' actions constitute a knowing "misrepresentation of character, amount or extent of the debt to be collected, and . . . false representations of material fact." *Id*. In response, Defendants argue that the Plaintiffs failed to (a) specify which provisions of the TDCPA were breached; (2) allege any facts that would establish a cause of action under TDCPA, and (3) allege any facts that would establish a causal link between a violation of the TDCPA and any alleged injury. Dkt. 8 at 17.

TDCPA is a Texas law that allows a consumer to sue for "threats, coercion, harassment, abuse, unconscionable collection methods, or misrepresentations made in connection with the collection of a debt." *Dominguez v. Ben. Fin. I, Inc.*, No. B:14–67, 2015 WL 12748637 (S.D. Tex. Feb. 4, 2015) (Morgan, J.).

1.  Provisions of the TDCPA

Defendants assert that Plaintiffs failed to specify which provisions of the TDCPA were breached. Dkt. 8 at 17. The complaint alleges that "Ocwen transferred note to PHH Mortgage and grossly failed to notify Plaintiffs of the transaction." Dkt. 1, Ex. D-1 at 15. A debt collector violates the TDCPA if it fails "to disclose clearly in any communication with the debtor the name of the person to whom the debt has been assigned or is owed when making a demand for money." Tex. Fin. Code Ann. § 392.304(a)(4).

Further, Plaintiffs assert that Defendants' acts were an intentional "misrepresentation of character, amount or extent of the debt to be collected, and . . . false representations of material fact." Dkt. 1, Ex. D-1 at 14. Section 392.304(a)(19) is a "catch-all" provision, which prohibits a debt collector from "using any . . . false representation or deceptive means to collect a debt or obtain information concerning a consumer." *Garcia v. Jenkins Babb, L.L.P.*, 569 F. App'x 274, 276 (5th Cir. 2014) (explaining § 392.304(a)(19)). Even though the plaintiffs do not specify the provision, the court, mindful of the fact the Plaintiffs are pro se, construes the pleading as referring to subsections 392.304(a)(19) and (4).

2.     Plaintiffs' Claim Under § 392.304(a)(4)

Defendants assert that Plaintiffs failed to allege any facts that would establish a cause of action under the TDCPA. Dkt. 8 at 17. Plaintiffs allege that they were not notified when Ocwen assigned the loan to PHH. Dkt. 1, Ex. D-1 at 15. Section 392.304(a)(4) requires a debt collector "to disclose clearly in any communication with the debtor the name of the person to whom the debt has been assigned or is owed when making a demand for money." § 392.304(a)(4).

Section 392.304(a)(4) requires Ocwen "to disclose clearly in any communication with the debtor" the name of the owner or assignee of the debt (*i.e.*, PHH). Yet, Plaintiffs do not allege that such a failure took place "in any communication" with them. Instead, the Plaintiffs merely state that they were not informed of the "transaction" between Ocwen and PHH. Dkt. 1, Ex. D-1 at 15. Accordingly, the Plaintiffs failed to provide sufficient factual content for their § 392.304(a)(4) claim, and thus it warrants a dismissal. *See Iqbal,* 556 U.S. at 678.

3.     Plaintiffs' Claim Under § 392.304(a)(19)

For a debt collector's statement to constitute a misrepresentation under § 392.304(a)(19), the debt collector must have used "false representation or deceptive means to collect a debt or obtain information concerning a consumer." § 392.304(a)(19). To maintain a successful TDCPA cause of action, a plaintiff must present evidence of actual damages, which were caused by the defendants' debt collection practices. *Lopez-Garcia v. Deutsche Bank Nat'l Trust Co. for Argent Sec. Inc.*, No. 16-cv-00217, 2017 WL 2869430, at *4 (W.D. Tex. July 5, 2017); *see also Jackson Law Office, P.C. v. Chappell*, 37 S.W.3d 15, 31 (Tex. App.—Tyler 2000, pet. denied).

12

Defendants assert that Plaintiffs failed to allege any facts that would establish a cause of action under TDCPA and any facts that would establish a causal link between a violation of the TDCPA and any alleged injury. Dkt. 8 at 17. Plaintiffs allege that Defendants' acts were an intentional "misrepresentation of character, amount or extent of the debt to be collected, and . . . false representations of material fact." Dkt. 1, Ex. D-1 at 14. However, Plaintiffs did not identify specific "deceptive means to collect a debt" or the specific statements that were "fraudulent, deceptive, or misleading representations." Moreover, as stated above, because the Plaintiffs were granted a Temporary Restraining Order from the state court, there is no indication that the Plaintiffs suffered an actual injury as required to establish a cause of action under TDCPA. Dkt. 1, Ex. D-2 at 3-4. Therefore, Plaintiffs have not stated a claim under § 392.304(a)(19). *Cf. Jackson Law Office, P.C.*, 37 S.W.3d at 31.

Because Plaintiffs' complaint does not contain sufficient allegations under either potentially applicable subsection of the TDCPA, Defendants' motion to dismiss the TDCPA claim is **GRANTED**.

E.   The Request for Temporary Injunctive Relief

Plaintiffs ask for a temporary restraining order and a temporary injunction to prevent Defendants from foreclosing. Dkt. 1, Ex. D-1 at 16. To establish a right to the remedy of injunctive relief, Plaintiffs are required to show "a substantial likelihood of success on the merits." *DSC Comm. Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir.1996). Because Plaintiffs have failed to allege sufficient facts to support their claims, they have not pleaded plausible grounds for obtaining injunctive relief.

However, since Plaintiffs are proceeding *pro se*, the court will grant them leave to amend their complaint to plead factual allegations raising a viable claim. Plaintiffs must file their amended complaint within twenty days from date of this order. If an amended complaint is not filed within this timeframe, the court will dismiss Plaintiffs' claims with prejudice and enter a final judgment.

## IV. CONCLUSION

Plaintiffs' claims are DISMISSED WITHOUT PREJUDICE for failure to raise a viable claim. Plaintiffs are granted leave to amend their complaint to plead factual allegations raising a viable claim against Defendants. Plaintiffs must file their amended complaint within twenty days from date of this order. If Plaintiffs do not file an amended complaint within twenty days, the court will enter a final judgment in the Defendants' favor.

Signed at Houston, Texas on July 17, 2020.

Gray H. Miller
Senior United States District Judge